UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff/Respondent,

v.

ALBERT GREER,

    Defendant/Petitioner.
_____/

Criminal Case No. 2:13-cr-20110

Civil Case No. 2:16-cv-12051

HONORABLE STEPHEN J. MURPHY, III

**OPINION AND ORDER DENYING MOTION TO VACATE SENTENCE [85]
AND MOTION TO DISMISS INDICTMENT AND FOR IMMEDIATE RELEASE [94]**

Defendant Albert Greer was convicted of bank fraud and conspiracy to commit bank fraud under 18 U.S.C. §§ 1349, 1344. ECF 60. Greer filed motions to vacate his 168-month sentence under 28 U.S.C. § 2255, and to dismiss the indictment and release him immediately. ECF 85, 94. For the following reasons, the Court will deny the motions.

**BACKGROUND**

On February 7, 2013, the Government charged Greer with conspiracy to commit bank fraud, bank fraud, and aggravated identity theft. ECF 1. The Court severed and dismissed the identity theft charge, the case proceeded to a six-day trial, and a jury convicted Greer of the remaining charges. On July 25, 2014, the Court determined a guideline range of 135 to 168 months, and sentenced Greer to 168 months imprisonment, three years supervised release, and $832,793.23 in restitution payments. ECF 80, PgID 1299–1301; ECF 60. A judgment issued on August 19, 2014. ECF 60. The next day, Greer filed a notice of appeal of the Court's judgment. ECF 61. Six weeks later, Greer failed to surrender to the Federal Bureau of Prisons as directed, and the Court issued a

warrant for his arrest. ECF 66. The arrest occurred while Greer's appeal was pending, so the Government moved for the Sixth Circuit to dismiss the appeal based on the fugitive disentitlement doctrine. The Sixth Circuit granted the motion and dismissed Greer's appeal. ECF 81.

**STANDARD OF REVIEW**

An individual sentenced by a federal court may seek to vacate, set aside, or correct the sentence pursuant to 28 U.S.C. § 2255. There are four different grounds for claiming relief: "(1) that the sentence was imposed in violation of the Constitution or laws of the United States; (2) that the court was without jurisdiction to impose such sentence; (3) that the sentence was in excess of the maximum authorized by law; and (4) that the sentence is otherwise subject to collateral attack." *Hill v. United States*, 368 U.S. 424, 426–27 (1962) (quoting 28 U.S.C. § 2255) (internal quotation marks omitted).

A § 2255 motion "is not a substitute for a direct appeal," *Regalado v. United States*, 334 F.3d 520, 528 (6th Cir. 2003) (citing *United States v. Frady*, 456 U.S. 152, 167–68 (1982)), so "a prisoner must clear a significantly higher hurdle than would exist on direct appeal" to merit collateral relief, *Frady*, 456 U.S. at 166. Generally, the motion must allege "(1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire proceeding invalid." *Weinberger v. United States*, 268 F.3d 346, 351 (6th Cir. 2001).

**DISCUSSION**

Greer seeks § 2255 relief for alleged prosecutorial misconduct, judicial errors and bias, and ineffective assistance of counsel. ECF 85, PgID 1318–19; ECF 86, PgID 1327–

2

33. Upon review, the Court construes Greer's "Motion to Dismiss Indictment and for Immediate Release" as a reply to the Government's response brief. The Government argues that Greer's first two claims are procedurally barred because he did not raise them on direct appeal, and his ineffective assistance of counsel claims are without merit. ECF 93, PgID 1375–88. An evidentiary hearing is appropriate when "a factual dispute arises." *Huff v. United States*, 734 F.3d 600, 607 (6th Cir. 2013). No factual dispute exists here; Greer's allegations are neither contradicted by the Government nor by the record. Because there is no factual dispute, the Court declines to hold an evidentiary hearing. 28 U.S.C. § 2255 (A Court should grant an evidentiary hearing "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief[.]").

I. <u>Prosecutorial Misconduct and Judicial Bias and Errors</u>

Greer could have raised his claims for prosecutorial misconduct, ECF 85, PgID 1318 and ECF 86, PgID 1330–31, and judicial bias and errors, ECF 85, PgID 1318, 1322–24, on direct appeal. The Sixth Circuit dismissed Greer's direct appeal pursuant to the fugitive disentitlement doctrine. The doctrine allows appellate courts to dismiss direct appeals "of defendants who fle[e] the jurisdiction during an appeal and remain[] at large." ECF 81, PgID 1308 (quoting *United States v. Lanier*, 123 F.3d 945, 946 (6th Cir. 1997)). Generally, courts consider a claim procedurally defaulted if a defendant fails to raise the issue on direct review. *See Massaro v. United States*, 538 U.S. 500, 504 (2003) (stating "claims not raised on direct appeal may not be raised on collateral review"); *Frady*, 456 U.S. at 165 ("[A] collateral challenge may not do service for an appeal."). The procedural

default rule "conserve[s] judicial resources and . . . respect[s] the law's important interest in the finality of judgments." *Massaro*, 538 U.S. at 504.

Two exceptions allow a defendant to avoid procedural default if: the defendant (1) shows "cause" and "actual prejudice" or (2) demonstrates that he is "actually innocent." *Bousley v. United States*, 523 U.S. 614, 622 (1998). Only the first exception applies here.[1]

The Government argues that Greer's § 2255 motion is procedurally barred because Greer's failure to raise his § 2255 issues on appeal was caused by his "decision to become a fugitive," and thus lacked a legitimate cause. ECF 93, PgID 1376–77 (citing *United States v. Lynn*, 365 F.3d 1225 (11th Cir. 2004)).[2] The court in *Lynn* noted:

> [I]f a defendant's direct appeal was involuntarily dismissed under the fugitive disentitlement doctrine, a prisoner is not per se barred from filing a § 2255 motion. Rather, a prisoner may proceed with those § 2255 claims that are cognizable and that are not defaulted under the traditional rules of procedural default.

*Lynn*, 365 F.3d at 1242. The *Lynn* opinion persuades the Court. *See also United States v. Lanier*, 238 F.3d 425 (6th Cir. 2000) (Table) (finding that the "district court correctly concluded that the dismissal with prejudice of these claims [by the Sixth Circuit] pursuant to the fugitive disentitlement doctrine precludes their consideration" in post-conviction motions).

---

[1] "'[A]ctual innocence' means factual innocence, not mere legal innocence." *Bousley*, 523 U.S. at 623. Greer's motion does not allege facts that call into question his factual or legal innocence.
[2] The Sixth Circuit has not addressed how a dismissal under the fugitive disentitlement doctrine affects a § 2255 motion. The *Lynn* opinion from the Eleventh Circuit is the only opinion the Court found addressing the precise issue in depth.

The Court finds that Greer's claims for prosecutorial misconduct and judicial error and bias are procedurally defaulted for several reasons. First, Greer makes no showing of "cause" or "actual prejudice" to satisfy the exception to procedural default. Second, even if presented, Greer's status as a fugitive is insufficient cause to satisfy the exception to procedural default. The "cause" exception for procedural default "ordinarily requires a showing of some external impediment preventing counsel from constructing or raising the claim." *Murray v. Carrier*, 477 U.S. 478, 492 (1986). Allowing Greer to rely upon his fugitive status for his showing of "cause" would eviscerate the efficacy of the fugitive disentitlement doctrine. A contrary decision would allow a fugitive criminal defendant to benefit from his own wrongdoing: he could escape the jurisdiction of the appellate court, the appellate court could dismiss his claims, and then he could bring the dismissed claims in a § 2255 motion as a substitute for a direct appeal. Third, permitting Greer to bring claims in a § 2255 motion that he could have raised on direct appeal would contradict the well-settled rule that collateral attacks on a judgment cannot serve as proxies for direct appeals. *See Massaro*, 538 U.S. at 504.

As a matter of equity, and in support of the long-established fugitive disentitlement doctrine, the Court determines that Greer cannot use his fugitive status to create the "external impediment" preventing his counsel from raising claims on appeal. Greer's claims of prosecutorial misconduct and judicial errors and bias are procedurally barred.

II.   Ineffective Assistance of Counsel

The remainder of Greer's motion centers on alleged deficiencies in his trial and appellate counsel's performances that amount to ineffective assistance. *See* ECF 86,

PgID 1327–29, 1332.³ Those claims are not subject to the procedural bar. *Massaro*, 538 U.S. at 503–04. To prevail, Greer must show that his counsel's performance was deficient, and "that the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To satisfy the first prong, Greer must show that counsel's errors were so serious that "counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* "Judicial scrutiny of counsel's performance must be highly deferential." *Id.* at 689. The second prong requires Greer to show "a reasonable probability"—which is to say, "a probability sufficient to undermine confidence in the outcome"—that the proceeding would have had a different result but for counsel's unprofessional errors. *Id.* at 694. The likelihood of that different result "must be substantial, not just conceivable." *Harrington v. Richter*, 562 U.S. 86, 112 (2011) (citing *Strickland*, 466 U.S. at 693). Furthermore, the Court reviews the reasonableness of counsel's performance from "counsel's perspective at the time of the alleged error and in light of all the circumstances." *Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986).

Greer's § 2255 motion is not the first instance of Greer raising complaints about his trial counsel. The Court previously noted that his complaints lacked merit. At the end of the first day of trial, Greer informed the Court of his belief that his defense counsel smelled like alcohol. ECF 73, PgID 535–36 (under seal). Greer raised the complaint after counsel had conducted nearly five hours of pre-trial and voir dire activities before the Court. In fact, the Court stated that it knew defense counsel was not impaired. *Id.* Defense

---

³ The exhibits attached to Greer's emergency motion to be released on bond pending the Court's disposition of his § 2255 motion, ECF 86, appear to be the exhibits referenced in Greer's § 2255 motion, ECF 85.

counsel then expressed concern that Greer's complaints were merely "the tip of the iceberg" of Greer's "campaign" to frustrate the case. *Id.*

Later, on the last day of trial argument, Greer made a request to represent himself. ECF 78, PgID 1060–61.[4] Defense counsel again—while protecting his client's privileged conversations—indicated that his client had engaged in "a concerted effort that began at the beginning of the trial" and that Greer made misrepresentations to the Court as "part of his plan" to be disruptive and to frustrate defense counsel's efforts. *Id.* at 1061, 1085. In the end, it became evident that Greer wanted to file a motion to challenge the indictment based on a jurisdictional element of the crime. *Id.* at 1081, 1087. Defense counsel raised and argued that issue as a Rule 29 motion. *Id.* at 1165–79. The Court further granted Greer leave to file a post-trial motion on the jurisdictional issue. *Id.* at 1093. As the Court noted, Greer's actions evinced a "manipulative effort to present particular legal arguments and [not] a sincerely designed effort to dispense with the benefits of counsel." *Id.* at 1091 (referencing *United States v. Frazier-El*, 204 F.3d 553 (4th Cir. 2000)).

After the attempt at disparaging his counsel failed, Greer argued that there was a conflict of interest because he was going to file a grievance against defense counsel. *Id.* at 1095. Defense counsel denied knowledge of the alleged complaint and then recounted Greer's public maneuvers and his concern that Greer was trying to "create a situation where he can say at some point that he didn't have effective assistance of counsel[.]" *Id.*

---

[4] The Court later ruled on the request and denied it on the record. ECF 78, PgID 1079–93.

The Court repeatedly stated on the record its belief that defense counsel served effectively and professionally as Greer's attorney. Greer himself acknowledged his counsel's efforts during the following exchange at trial:

> DEFENSE COUNSEL: Yesterday after Mr. Greer and I had conversations [regarding self-representation and counsel's performance] with you, Mr. Greer, I just want to thank him for this, he apologized to me personally.
>
> THE COURT: Okay.
>
> DEFENSE COUNSEL: And said that my representation was brilliant, and I'll put this in quotes, he said "he loved me and I was his favorite lawyer."
>
> THE COURT: Okay.
>
> DEFENSE COUNSEL: Is that right, Mr. Greer?
>
> DEFENDANT GREER: That's right.

ECF 79, PgID 1266. Now, Greer repackages his old, frivolous complaints about his counsel's effectiveness in his § 2255 motion. Greer's motion represents an abuse of the judicial process and judicial resources. Greer's manipulative behavior detracts from the meritorious claims potentially raised by other prisoners in § 2255 motions and by other filers in the Court. Greer has repeatedly demonstrated a contempt for the judicial process—clearly manifested by his decision to become a fugitive—and the Court's extensive treatment of his claims detracts from the many civil and criminal defendants before it that follow proper procedure and manifest a respect for judicial economy and the interests of justice. Notwithstanding Greer's pattern of abusive behavior, the Court now addresses his claims of ineffective assistance of counsel.

    A.    Trial Counsel: Plea Offer

8

Greer argues that his trial counsel was ineffective for improperly handling the Government's plea offer. ECF 86, PgID 1327. He argues that he failed to accept the "good offer" because counsel "grossly understated the sentence exposure [Defendant] would face by going to trial," failed to adequately explain the plea agreement and related information with Defendant, and "misrepresented [Defendant's] willingness to accept the Government's offer to the court." *Id.*

The final pretrial conference transcript belies Greer's claim. At the conference, the Government stated that its offer—sent to Greer's counsel four months earlier and reiterated to Greer shortly before the hearing—was to dismiss the aggravated identity theft and bank fraud counts if Greer pleaded guilty to one count of conspiracy with a guideline range of 27 to 33 months. ECF 71, PgID 386–87. Greer's counsel confirmed that he received the proposal prior to the hearing, the prosecutor conveyed the salient parts of the proposal to Greer directly, and Greer rejected the proposal after stepping outside with counsel to discuss it. *Id.* at 387. Counsel confirmed that there was sufficient time to discuss the proposal, he answered all of Greer's questions about the proposal, and Greer comprehended his situation. *Id.* Next, the Court explained to Greer the possible consequences he might face if he rejected the agreement, and Greer confirmed that he understood the proposal as conveyed to him by counsel months earlier, and by the prosecutor before the hearing. *Id.* at 389. The following exchange ensued:

> THE COURT: Okay. All right. You believe you had plenty of time to discuss your options with your lawyer?
>
> DEFENDANT GREER: No, I don't.
>
> THE COURT: You don't think you've had enough time to talk it over with your

lawyer?

DEFENDANT GREER: No.

THE COURT: How much more time do you need?

DEFENDANT GREER: Because when we talk, we don't talk.

THE COURT: Pardon me?

DEFENDANT GREER: When we talk, we don't talk. We don't have like a couple of hours, and when – he don't answer any of my questions. Well, he answer some of the questions but not – you know, in his lawyer style, but he don't really – I haven't – I have not got enough information to make a decision.

THE COURT: Well, it's, you know – okay. Look, I've known Mr. Daly for quite a long time and he has a good stellar, in fact, reputation around here. But I mean he said that you've had plenty of time to discuss with him what happens here. I don't know that you need a couple of hours to discuss the numbers up and down. But beyond that, what is it that you would need to know about whether or not you could accept the government's offer or not?

DEFENDANT GREER: Well, I do understand the numbers.

THE COURT: Yes.

DEFENDANT GREER: Yes. If we're only talking numbers, yeah, I understand the numbers.

THE COURT: Okay. All right. Okay. So your position is that the plea proposal was conveyed to you by your lawyer, it was also recommitted by the government this afternoon. You've had time to understand the numbers and you've also had time to understand the deal. You just have the need to have more questions about other matters of legal process, is that what I'm to understand?

DEFENDANT GREER: Yes, so I can make a decision.

THE COURT: All right. Well, now, we can't go on and on here. This case was obviously indicted some time ago, and in addition to that, we have speedy trial concerns and a number of other things. So let me just ask you, do you understand the consequences of the proposed plea and going to trial? I mean it seems to me you understand that pretty well. You can get 27 to 33 months by pleading guilty or you can be looking at two trials and upwards of 72 months or six years in jail. You under – we all understand that pretty easily, right?

10

> DEFENDANT GREER: Right.
>
> THE COURT: All right. Okay. All right. Now, with all that in mind, is it true that you don't want to plead guilty but you want to have a trial and possibly two trials in this case?
>
> DEFENDANT GREER: After conferring with my attorney.
>
> THE COURT: What's that?
>
> DEFENDANT GREER: Yeah, after conferring with my attorney, that the decision we came up with.
>
> THE COURT: All right. Okay. All right. So the answer is yes to my question?
>
> DEFENDANT GREER: Yes.

*Id.* at 390–91. Greer repeated his assertion stating to the Court through counsel that he did not want to accept the Rule 11 Plea Agreement, but would negotiate further with the government. *Id.* at PgID 404. The Court also asked Greer's counsel for his take on the situation:

> THE COURT: . . . Let me – let me just ask you frankly, because I don't want Mr. Greer to be inculpating himself in anything, wittingly or unwittingly, what do you see? He seems to want more time to talk to you, but is it about the nature of what, attempting to get a better deal or attempting to understand certain aspects of the Plea Agreement better, or what can you represent regarding the plea negotiations that have taken place to this date, anything?
>
> MR. DALY: I can say to you that Mr. Greer has never expressed any interest in pleading guilty or accepting any offer that the government might make. What I believe he is saying is that he wants more time with me to prepare for trial. That's what I interpret his statement to be.
>
> THE COURT: Okay. All right. Okay. All right. Very good.

*Id.* at 392. Defense counsel later responded to Greer's allegations that he was uncommunicative:

> DEFENSE COUNSEL: . . . I have read his e-mails, I have responded to his questions. I have responded to his questions in my office during interviews that have lasted hours. Every time we come to court, for every question he asks, we will step outside, I will answer – answer his question. Now, he may ask the same question repeatedly, and I will answer it until there is no reason to keep answering the same question. He's had full access to me to ask any questions he wants.

ECF 78, PgID 1086.

Greer's testimony and the testimony of his attorney show that his counsel discharged the "duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused." *Missouri v. Frye*, 566 U.S. 134, 145 (2012). Greer argues that he did not understand his sentence exposure and that the sentence he received far exceeded representations made during plea negotiations. The record belies the assertion. First, Greer acknowledged that his crimes could carry a term of up to 30 years. ECF 5, PgID 14. Second, the Court based Greer's sentence, in part, on mortgage fraud committed at properties not included in the indictment but later revealed during trial. Greer's attorney objected to the inclusion of more than the four properties listed in the indictment. *See* ECF 76, PgID 875–81. The Court addressed that concern and allowed additional properties to be addressed. *Id.* at 960–64. The inclusion of additional properties raised the amount of loss perpetrated by Greer's fraud and substantially increased his sentence. Defense counsel objected to the inclusion of those properties and the increased loss amount in his objections to the pre-sentence report. *See* ECF 80, PgID 1284–88. In fact, defense counsel maintained—in a non-frivolous manner—that the appropriate sentencing range was zero to six months. *Id.* at 1293. At the time of the plea agreement, therefore, defense counsel could not have anticipated the sentence exposure that Greer eventually faced. Finally, Greer affirmatively stated on the

record that he understood the plea agreement and that he was declining to accept the plea. None of his new claims undermines his statements to the Court regarding his knowledge of the agreement or the voluntariness of his rejection of the plea offer. Accordingly, the Court denies this aspect of Greer's ineffective assistance of counsel claim.

B.      Trial Counsel: Additional Mistakes

Greer also contends that his trial counsel was ineffective for failing to file certain pretrial motions, ECF 86, PgID 1328, failing to object to evidence during trial, *id.*, and failing to represent adequately Greer during sentencing, *id.* at 1329. But Greer's motion is devoid of any specific, relevant details explaining why counsel was ineffective and how Greer was prejudiced by the assistance rendered (e.g., the basis of the motions and objections counsel should have filed or lodged, and how he was prejudiced by counsel's failure to file the motion or lodge the objections).

As an initial matter, the Court recognizes the "wide latitude" provided to counsel when "making tactical decisions." *Strickland*, 466 U.S. at 689. Greer's first additional mistake of not filing certain pretrial motions likely refers to defense counsel's strategic decision to not file a pre-trial motion on the jurisdictional issue in the indictment. Defense counsel raised the issue in a Rule 29 motion before the Court. The Court does not second-guess the well-considered strategic decisions of counsel.

Greer further avers that defense counsel failed to object to evidence at trial. The record clearly refutes that assertion. The record is replete with defense counsel's objections to evidence presented at trial. The claim is clearly unfounded.

Finally, Greer asserts that trial counsel failed to represent him adequately at sentencing. Defense counsel filed written objections to the pre-sentence report. *See* ECF 93-2, PgID 1404–07. Defense counsel raised those objections again at sentencing. ECF 80, PgID 1283–93. The record clearly reveals that defense counsel effectively represented Greer throughout the pre-trial and trial process.

    C.    Appellate Counsel

Greer also claims that his appellate counsel rendered ineffective assistance. ECF 86, PgID 1332. The claim is frivolous. Trial counsel timely filed a notice of appeal before the Sixth Circuit granted his motion to withdraw representation and appointed new appellate counsel. *See* ECF 61, 63. Appointed counsel then acted diligently by ordering trial and sentencing transcripts, requesting and receiving an extension of time to file Greer's brief, and responding to the Government's motion to dismiss the appeal. *See United States v. Greer*, Case No. 14-2076, ECF 12-1, 16, 19 (6th Cir.). It was Greer's failure to report to the Federal Bureau of Prisons facility—not appellate counsel's ineffective assistance—that gave the Sixth Circuit sufficient cause to dismiss his appeal. Accordingly, the Court rejects Greer's claim of ineffective assistance of appellate counsel.

III.    <u>Certificate of Appealability</u>

The Court must determine whether Greer has demonstrated a "substantial showing of a denial of a constitutional right" such that a Certificate of Appealability (COA) should issue. 28 U.S.C. § 2253. Reasonable jurists could not conclude that Greer's claims deserve further review, so the Court will not issue a COA. *Slack v. McDaniel*, 529 U.S.

473, 484 (2000). And because an appeal cannot be taken in good faith, the Court denies Greer leave to proceed in forma pauperis on appeal. *See* Fed. R. App. P. 24(a).

**ORDER**

**WHEREFORE** it is hereby **ORDERED** that Defendant's motion to vacate sentence [85] and motion to dismiss indictment [94] are **DENIED**, and the companion civil case, No. 2:16-cv-12051, is **DISMISSED**.

**IT IS FURTHER ORDERED** that a Certificate of Appealability is **DENIED**.

**IT IS FURTHER ORDERED** that Defendant is **DENIED** leave to appeal in forma pauperis.

**SO ORDERED.**

s/ Stephen J. Murphy, III
STEPHEN J. MURPHY, III
United States District Judge

Dated: January 29, 2018

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on January 29, 2018, by electronic and/or ordinary mail.

s/ David Parker
Case Manager